**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> **v.** <br><br> **RICHARD LITTLE,** <br><br> **Defendant.** | **Case No. 25-CR-286 (AHA)** |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing. The Defendant, Richard Little, is before this Court after pleading guilty to Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), after law enforcement officers recovered the Defendant's backpack that contained a handgun and an assortment of illegal drugs. For the reasons that follow, the United States respectfully requests that the Court sentence the Defendant to a term of **70 months' imprisonment** and three years of supervised release.

### I.    FACTUAL BACKGROUND

The factual proffer to which the Defendant agreed as part of his October 21, 2025 guilty plea establishes the following uncontested facts:

On September 3, 2025, law enforcement officers attempted to conduct a traffic stop of the Defendant's car after they saw him drive into an apartment complex with one running headlight. The Defendant parked and exited his car.  Upon seeing officers, he ran into an apartment located at 3094 Stanton Road, SE, Washington, D.C. 20020, carrying a black and green backpack. Officers chased after him. The leaseholder of the apartment that officers saw the Defendant run into with

the black and green backpack gave law enforcement officers consent to enter the apartment and search for the black and green backpack.

Once inside of the apartment, officers found the opened black and green backpack with the handle of a firearm sticking out of it, in plain view. After officers seized the black and green backpack, they found a black Glock 22 Handgun (SN: VVY019) with one round of .40 caliber ammunition in the chamber and 14 rounds of .40 caliber ammunition in the magazine. Officers also located the following items inside of the backpack: the Defendant's driver's license and credit cards; Virginia State court papers in the Defendant's name; 168 Oxycodone pills; one Morphine Sulfate extended-release pill; 3.6 ounces of packaged Marijuana; and one jar of Hashish weighing 0.2 ounces. Law enforcement officers also recovered $700 in U.S. currency from the Defendant's possession.

There are no firearms or ammunition manufacturers in Washington, D.C. Therefore, the recovered Glock 22 semi-automatic handgun and rounds of ammunition must have travelled across state lines.

The Defendant has a prior criminal felony conviction punishable by a term of incarceration greater than one year. On January 21, 2021, the defendant was convicted of Unlawful Possession of a Firearm in Washington, D.C. Superior Court case 2020 CF2 004178 and sentenced to 24 months' incarceration, with a mandatory minimum term of 12 months' incarceration. As a result, the Defendant was aware at the time of his arrest in the instant case that he had a prior conviction for a crime punishable by more than one year.

II.    **PROCEDURAL HISTORY**

On September 4, 2025, the United States Attorney's Office for the District of Columbia filed a one-count Complaint, charging the Defendant with Unlawful Possession of a Firearm and

Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1) for carrying a handgun on September 3, 2025. That same day, the Defendant was arrested, detained, and had his initial appearance before the United States Magistrate Judge G. Michael Harvey. At that hearing, the Government made an oral motion, asking that the Defendant be held pending trial. Judge Harvey set a detention hearing for September 9, 2025. On September 8, 2025, the Defendant filed an Unopposed Motion to Continue the Detention Hearing, which was granted by United States Magistrate Judge Matthew J. Sharbaugh. The Defendant remained held.

On September 16, 2025, a United States District Court grand jury returned a one-count Indictment, charging the Defendant with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), for carrying a handgun on September 3, 2025. On October 21, 2025, the Defendant pleaded guilty to the one-count Indictment. In return, the Government agreed to ask for a sentence within the calculated guideline range sentence of 70 months to 87 months' incarceration.

## III.  <u>LEGAL STANDARD</u>

Under the plea agreement, the Defendant agreed that the sentence in this case would be determined by the Court, pursuant to the factors set forth in 18 U.S.C. § 3553(a). The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal

conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –

(i) issued by the Sentencing Commission ...; and

(ii) that, . . . are in effect on the date the defendant is sentenced; ...

(5) any pertinent policy statement –

(A) issued by the Sentencing Commission ... and

(B) that, . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

## IV.     ANALYSIS OF U.S. SENTENCING GUIDELINES

The parties and Probation concur that the Defendant's total offense level is 21 and his criminal history category is V, resulting in a guidelines range of 70 to 87 months' imprisonment. There is no dispute concerning the guidelines calculation.

## V.     THE GOVERNMENT'S SENTENCING RECOMMENDATION

A sentence of 70 months is appropriate for the crime at issue here. In this case, sentencing is guided by 18 U.S.C. § 3553(a). Some of the factors this Court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence imposed to reflect the seriousness of the offense and to promote

respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities, § 3553(a)(6).

### A. Nature and Circumstances of the Offense

The nature and circumstances of this offense are serious and warrant a guideline sentence of imprisonment. Although the Defendant has pled guilty to unlawful possession of a firearm, as made clear by his proffer of fact, his criminal conduct went far beyond that. Here, the Defendant not only possessed a loaded handgun that contained 14 rounds of .40 caliber ammunition in a 15-round magazine, but he also had a backpack full of illegal narcotics, including 168 Oxycodone pills; one Morphine Sulfate extended-release pill; 3.6 ounces of packaged Marijuana; and one jar of Hashish weighing 0.2 ounces. The presence of so many kinds of illegal drugs, combined with $700 recovered from the Defendant's possession, are strong indicators that the Defendant was dealing drugs.



**Figure 1: Black Glock 22 Handgun; 15-Round Magazine; and 168 Oxycodone pills.**



**Figure 2: Packaged Marijuana and $700 in Recovered Currency.**

Given the circumstances, the possessory nature of the Defendant's crime does not mitigate the danger he presented to the community. As a threshold matter, the Defendant's possession of a loaded handgun was an inherently dangerous act that placed the community at risk. *See, e.g.*, *United States v. Gassaway*, No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at *2–3 (D.D.C. Sept. 21, 2020) (making same observation); *United States v. Cole*, 459 F. Supp. 3d 116, 120

(D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence").

While the Defendant pled guilty to a possessory offense, courts in this District have warned against discounting the inherent danger associated with loaded firearms. *See United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *7-8 (D.D.C. Feb. 6, 2023), *aff'd,* No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023) (the absence of evidence of "use" "does little to detract from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended magazine,…more ammunition than the gun was originally manufactured to carry, thereby increasing its potential to do greater harm" and placement "at the ready, on his person, and easily within reach"). While this case does not involve the Defendant's use of the recovered firearm, people carry guns because they intend to use them.

Moreover, drug trafficking is unlawful, and because it is unlawful there is a heightened risk that an individual will use a gun to resolve a dispute or to defend his drug supply or earnings.  Guns thus pose an even greater danger to the community when in the hands of those dealing drugs. *See, e.g.*, *Muscarello v. United States*, 524 U.S. 125, 132 (1998) (recognizing the "dangerous combination" of "drugs and guns") (quoting *Smith v. United States*, 508 U.S. 223, 240 (1993)).

While the Defendant's crimes did not result in the infliction of a physical injury upon another, unlawful possession of a firearm can lead to dangerous consequences, especially when illegal drugs are present. Such crimes are serious, and the nature and circumstances of this offense justifies sentencing the Defendant to 70 months' incarceration.

### B.  The Defendant's History and Characteristics

The Defendant's criminal history also weighs in favor of a guideline sentence. The instant conviction is not Mr. Little's first conviction for unlawfully possessing a firearm. It's not even his second. It's his third.

### 1.  *The Defendant Has Numerous Firearm and Drug Convictions*

On January 6, 2012, the Defendant was convicted of Possession of a Firearm in Furtherance of a Drug Trafficking Offense in U.S. District Court in the Eastern District of Virginia, case number 11-CR-000508. *See* PSR at 9, ¶ 31. In that case, the Defendant was sentenced to 60 months' imprisonment after police officers found a loaded Smith and Wesson, .40 caliber pistol under the driver's seat of the car he was driving, along with a plastic bag containing 48 5-methoxy-N, Ndisopropylytryptamine pills and a blue Ziplock bag containing l6 grams of Marijuana. *Id.* at 10. There, the Defendant admitted to having the pills, which he believed to be ecstasy, and acknowledged that he intended to sell them. *Id.*

On January 21, 2021, the Defendant was sentenced to 24 months' imprisonment for Unlawful Possession of a Firearm (Prior Conviction) Firearm in D.C. Superior Court, case number 2020-CF2-004178. *See* PSR at 13, ¶ 35. There, the Defendant bailed out of a vehicle law enforcement was pursuing. During the foot chase, the Defendant tossed an AM-15 AR Pistol over a fence that was wrapped in his jacket. *Id.* The recovered firearm had one round in the chamber and a 30-round capacity magazine that contained 26 rounds. *Id.* Officers also located a bag near the Defendant that contained a scale, Marijuana, 6.1 grams of amphetamines, and $4,411. *Id.*

In addition to these firearm convictions – where illegal drugs were present – the Defendant also has two additional narcotics convictions. On February 27, 2018, the Defendant was sentenced to five years' imprisonment, with all but one day suspended, for Conspiracy to Distribute a Controlled and Dangerous Substance in Montgomery County Circuit Court, Maryland, in case number 133112C. *See* PSR at 11, ¶ 33. There, prosecutors dismissed Count 2 – carrying a concealed dangerous weapon – as part of the Defendant's plea agreement. *Id.* Finally, on March 18, 2019, the Defendant was convicted of Possession of a Schedule III Controlled Substance in

Fairfax County, VA, in case number GC18172306-00. *See* PSR at 12, ¶ 34. There, he was given a 90-day fully suspended sentence after law enforcement officers conducted a traffic stop of the vehicle he was driving and found Marijuana, Ecstasy, and $907 inside the console next to a small baggie of white powder. *Id.* The charge for possessing a butterfly knife was dismissed at sentencing. *Id.*

As is evident from the Defendant's criminal convictions, he has a long history of unlawfully carrying firearms or other dangerous weapons while simultaneously possessing a variety of illicit narcotics. The instant case is the Defendant's fifth conviction where drugs were present and third conviction where he unlawfully possessed a firearm. Courts in this jurisdiction have said on a number of occasions that firearms and drug dealing are incredibly dangerous. When drugs are present, the use of firearms if also present, is more likely. The Defendant's escalating criminal behavior and the fact that four previous convictions did not deter him from again possessing a firearm and drugs is evidence that a lengthy period of incarceration is warranted.

2.  *The Defendant Has a Poor Record of Supervision and Compliance*

In addition to the Defendant's numerous firearm and narcotics convictions, the Defendant has an incredibly poor history of complying with supervision and staying out of trouble with the law. For example, after being convicted of Possession of a Firearm in Furtherance of a Drug Trafficking Offense in January 2012, the Defendant was in possession of MDMA on May 12, 2017 – less than a year after being released from his mandatory 60-month sentence. *See* PSR at 10, ¶ 31. The Defendant's record on supervision was so poor that it was revoked, and he was sentenced to 15 months' incarceration on October 9, 2020. *Id.*

On November 29, 2023, the Defendant received an Alleged Violation Report (AVR) in his Unlawful Possession of a Firearm case for: (1) failing to report to the residential sanctions center;

(2) being a loss of contact; (3) failing to report for drug screens; (4) providing "bogus" drug samples; (5) testing positive for Marijuana and ETG alcohol; and (6) failing to charge his GPS device on 28 occasions over a three-month period. *See* PSR at 13, ¶ 35. The Defendant's compliance with his supervision was so poor in that case as well that it was ultimately revoked on February 16, 2024, and he was sentenced to 14 months' incarceration. *Id.* at 14.

The Defendant cannot argue that these violations are those of a young man who doesn't know better. His last revocation occurred when he was 36 years old. At that age and given his experience with the criminal justice system, he should know how to follow the law and stay in compliance with the terms of his supervised release. Yet, despite being given numerous chances from various jurisdictions across the DMV area, he repeatedly threw them away. The Defendant's inability to stay out of trouble despite being given numerous opportunities to do so warrants a guideline prison sentence.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

While thankfully no one was injured in the instant case, firearms combined with the illicit narcotics the Defendant possessed heightened the danger to the community. A significant term of incarceration is necessary to incapacitate the Defendant and protect the community, as he is someone who clearly has not learned from his past convictions, nor takes the previous sentences that he has received seriously.

For example, the Defendant committed the instant offense while under supervision in Alexandria Circuit Court, Virginia, in case number CR-25-000293. *See* PSR at 15, ¶ 37. In that case, the Defendant was convicted and sentenced on August 28, 2025 for making a false statement to obtain a car title and was given a fully suspended three-year sentence. Yet, despite being under a criminal sentence in Virginia – *less than one week after his release* – the Defendant was arrested

for carrying a firearm he is prohibited from carrying.

Moreover, on September 2, 2025, the Defendant pled guilty to Credit Card Fraud in D.C. Superior Court, case number 2025-CF2-000570, and was scheduled to be sentenced on November 7, 2025. *See* PSR at 14, ¶ 36. In that case, the Defendant pled guilty to using someone's credit card without their consent and according to the PSR, he failed to express remorse for stealing that person's credit card. *Id*. Yet, despite pleading guilty and waiting to be sentenced, the Defendant *that very night* was arrested for unlawfully possessing a firearm. It is bad enough that the Defendant walked out of Court without feeling remorse for his crimes. It is egregious that less than 24 hours later, he was breaking the law again; this time being arrested with a gun and drugs in the instant case. The Defendant's behavior shows that he does not care about complying with the law and will not do so here even if the Court strongly encourages him to do so. The Defendant needs more than words to get him to follow the law; he needs a significant sentence.

### D.  The Need for the Sentence to Afford Adequate Deterrence

A guideline range sentence is needed to deter the Defendant from perpetrating similar crimes in the future. As is evident from the Defendant's criminal history, receiving a 60-month mandatory sentence in 2012 did not discourage him from continuing his life of crime as he received additional firearm or drug convictions in 2018, 2019, 2021 and the instant offense in 2025. A lengthy prison sentence is needed to deter him from continuing down the same path. The sentence the Government is asking for hopefully is sufficiently lengthy to deter the Defendant from continuing his criminality. Moreover, the sentence sends a message that possessing firearms and drugs – a very dangerous combination – is taken seriously by this Court, especially when the Defendant is a repeat offender.

### E.  The Need to Avoid Sentence Disparities

The Government's requested sentence is reasonable, fair, and in line with sentences given

to Defendants in the last five years. Defendants with an Offense Level of 21 and a Criminal History Category of V on average receive a sentence of 66 months' imprisonment, with the median length of sentence imposed being 70 months – the bottom of the calculated guidelines range in this case. *See* PSR at 28, ¶ 116. Seventy months of incarceration is warranted here because as outlined above, this case is more than a simple possession case. Here, the Defendant was arrested with numerous drugs as well as a gun. The combination of these facts, plus the Defendant's criminal history, makes this instant case more egregious than the average case where a defendant might have simply possessed a firearm. The Government's request takes all of these factors into consideration and avoids creating a sentence disparity with other defendants who may be similarly situated.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully recommends that the Court sentence Defendant Richard Little to 70 months' imprisonment, to be followed by three years of supervised release.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:      /s/ *Jared English*
JARED ENGLISH
D.C. Bar No. 1023926
Assistant United States Attorney
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: 202-465-0089
Email: Jared.English@usdoj.gov